**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MICHAEL J. FOX, , ANTHONY MARTIN, MONICA OGAWA, NORBERT HENNRICH, and SAMUEL MANGANO, | Case No.  1:18-cv-07936 |
| Plaintiffs | |
| v. | JURY TRIAL DEMANDED |
| MARRIOTT INTERNATIONAL, INC. and STARWOOD HOTELS & RESORTS WORLDWIDE, LLC, | |
| Defendants. | |

**CLASS ACTION LAWSUIT**

Plaintiffs, MICHAEL J. FOX,  ANTHONY MARTIN, MONICA OGAWA, NORBERT HENNRICH, and SAMUEL MANGANO (at times "Plaintiffs"), by and through their attorney, James C. Vlahakis of the Sulaiman Law Group, Ltd., bring this putative class action against Defendants STARWOOD HOTELS & RESORTS WORLDWIDE, LLC and MARRIOTT INTERNATIONAL INC. to redress Defendants' conduct which led to the improper release of their below defined Personal Identifying Information to nefarious third parties:

**I.    Introduction**

1.      Plaintiffs, individually and on behalf of those similarly situated persons (hereafter "Class Members"), bring this class action to secure redress of Defendants negligent and reckless violation of its customers' privacy rights.

2.      Defendants STARWOOD HOTELS & RESORTS WORLDWIDE, LLC ("Starwood") and MARRIOTT INTERNATIONAL, INC. ("Marriott") maintain and operate a customer reservation and rewards database which they refer to as the "Starwood guest

reservation database". On November 30, 2018, Marriot publically disclosed a data breach involving millions of users of the Starwood guest reservation database.

3. Plaintiffs and Class Members signed up with Starwood guest reservation database and in doing so they supplied the Starwood guest reservation database with their names, telephone numbers, email addresses, date of birth, credit card numbers with expiration dates, and other demographic information (hereafter "Personal Identifying Information").

4. Plaintiffs and some of the Class Members supplied the Starwood guest reservation database with their passport number.

5. During the time period when Plaintiffs and Class Members utilized the Starwood guest reservation database, one or both of the Defendants allowed Starwood guest reservation database to negligently or recklessly exposed to hackers and/or unknown nefarious third parties.

6. As alleged below, Plaintiffs' and Class Members' Personal Identifying Information was vulnerable to hackers and and/or unknown nefarious third parties by Defendants' negligent and/or reckless conduct in how they managed the security of the Starwood guest reservation database.

7. Plaintiffs and Class Members suffered real injuries as a result of Defendants' negligently or recklessly exposing their Personal Identifying Information to hackers and other as yet unknown nefarious third-parties.

8. As disclosed in a third-party internet post titled "Starwood Guest Reservation Database Security Incident," The Personal Identifying Information of Plaintiffs may also have been stolen from the Starwood guest reservation database as result of how Defendants' hosted and secured Personal Identifying Information in the Starwood guest reservation database.

2

9.     The above referenced internet posting can be found at https://answers.kroll.com/

10.    In addition to the Plaintiffs, thousands of users of the Starwood guest reservation have had their Personal Identifying Information leaked, stolen and/or compromised by hackers and other as yet unknown nefarious third-parties.

11.    Accordingly, Plaintiffs, and thousands of Starwood guest reservation users have had their privacy rights violated, have been exposed to the increased risk of fraud and identify theft, and have otherwise suffered damages.

## II.     Parties, Jurisdiction and Venue

12.    Plaintiff MICHAEL J. FOX is a resident of the state of Illinois and resides in this District.

13.    Plaintiff ANTHONY MARTIN is a resident of the state of Illinois and resides in this District.

14.    Plaintiff MONICA OGAWA is a resident of the state of Illinois and resides in this District.

15.    Plaintiff NORBERT HENNRICH is a resident of the state of Illinois and resides in this District.

16.    Plaintiff MIKE BAIER is a resident of the state of Illinois and resides in this District.

17.    Plaintiff  SAMUEL MANGANO is a resident of the state of Ohio.

18.    Plaintiffs have utilized the Starwood reservation system make a hotel reservation at one of the Defendants' hotels.

19.    Plaintiffs supplied forms and variations of their Personal Identifying Information in conjunction with their creation and use of their respective reservation on the Starwood reservation system database.

3

20.    Plaintiffs submitted or updated their credit card information either in initially setting up Starwood reservation system database account, in updating their account, when making reservation through their Starwood reservation system database account or when they checked-in in relation to a reservation made through the Starwood reservation system database.

21.    Defendant Starwood is a Maryland corporation with its principal place of business in Bethesda, Maryland.

22.    Defendant Marriott is a Maryland corporation with its principal place of business in Bethesda, Maryland.

23.    This Court has subject matter jurisdiction over the state law claims asserted here pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), since some of the Class Members are citizens of a State different from the Defendant and, upon the original filing of this complaint, members of the putative Plaintiff class resided in states around the country; there are more than 100 putative class members; and the amount in controversy exceeds $5 million.

24.    The Court also has personal jurisdiction over the Parties because Defendants have conducted and continue to conduct substantial business in Illinois, Defendants are authorized to conduct business throughout the United States, and Defendants maintain hotel and resort properties in this District.

25.    Through their business operations in this District, Defendants intentionally avail themselves to the jurisdiction of this Court.

26.    Venue is appropriate in this District pursuant to 28 U.S.C. § 1391 because, among other things: (a) one or more of the Plaintiffs is a resident of this district; (b) Defendants maintain hotel and resort properties in this District; (c) one or more of the Plaintiffs made a reservation for a property owned or maintained by one or more of

the Defendants in this District; and (d) one or more of the Plaintiffs suffered harm in this district as a result of Defendants' negligence or recklessness.

**III. Background Facts – Our Personal Identifying Information is at Risk**

27. Personal Identifying Information, and in particular, credit and debit card data is highly coveted and a frequent target of hackers.

28. Hackers also value emails and telephone numbers as they allow hackers to reset passwords.

29. Despite well-publicized litigation and frequent public announcements of data breaches by ride-share apps, social-medial websites, e-mail providers, on-line retailers, brick and mortar merchants and credit reporting agencies, Defendants opted to maintain an insufficient and inadequate system to protect the Personal Identifying Information of Plaintiffs and Class Members.

30. Criminal underground alike recognize the value of Personal Identifying Information and aggressively seek out vulnerable websites.

31. Credit or debit card information is highly valuable to hackers. Credit and debit card information that is stolen from the point of sale are known as "dumps." *See* KREBS ON SECURITY April 16, 2016, https://krebsonsecurity.com/2016/04/all-about-fraud-how-crooks-get-the-cvv/

32. Credit and debit card dumps can be sold in the cybercrime underground for a retail value of about "$20 apiece." *Id.*

33. This information can also be used to clone a debit or credit card. *Id.*

34. According to Javelin Strategy and Research, "one in every three people who is *notified of being a potential fraud victim becomes one* . . . with 46% of consumers who had cards breached becoming fraud victims that same year." *See*, "Someone Became an Identity Theft Victim Every 2 Seconds Last Year," Fox Business, Feb. 5, 2014,

http://www.foxbusiness.com/personalfinance/2014/02/05/someone-became-identitytheft-victim-every-2-seconds-lastyear.html

35.     It takes time for consumers to fix and repair their credit after it has been compromised by nefarious third parties.

36.     The Department of Justice's Bureau of Justice Statistics ("BJS") found that "among victims who had personal information used for fraudulent purposes, 29% spent a month or more resolving problems." *See* "Victims of Identity Theft," U.S. Department of Justice, Dec 2013, https://www.bjs.gov/content/pub/pdf/vit12.pdf

37.     The BJS reported, "resolving the problems caused by identity theft [could] take more than a year for some victims." *Id.* at 11.

38.     Just as there is often a time lag between a data breach or leak of Personal Identifying Information occurs and when it is discovered, there is a time lag between when Personal Identifying Information is stolen and when it is used.

39.     In 2007, the U.S. Government Accountability Office ("GAO") conducted a Report to Congressional Requesters regarding data breaches and reported the following:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

http://www.gao.gov/new.items/d07737.pdf (at page 33).

**IV.     Factual Allegations**

40.     On November 30, 2018, Defendants disclosed that Starwood guest reservation database had leaked "some combination of name, mailing address, phone number, email address, passport number, Starwood Preferred Guest ("SPG") account

6

information, date of birth, gender, arrival and departure information, reservation date, and communication preferences."

41.    On November 30, 2018, a posting by The KROLL, A DIVISION OF DUFF & PHELPS Blog Post reported that on "On September 8, 2018, Marriott received an alert from an internal security tool regarding an attempt to access the Starwood guest reservation database." The KROLL posting can be found at https://answers.kroll.com/

42.    Despite received this alert on September 8, 2018, Defendants did not timely inform the affected consumers of the data breach of the Starwood guest reservation database.

43.    Based upon the suffered data breach, Defendants failed to implement and maintain reasonable security procedures and practices appropriate to protect the nature and scope of the information compromised in the data breach and/or leak.

44.    The data breach and/or leak was a direct and proximate result of Defendants' failure to properly safeguard and protect Plaintiffs' and Class Members' Personal Identifying Information from unauthorized access, capture, use, and disclosure, as required by various state and federal regulations, industry practices, and the common law.

45.    Among other things, Defendants failed to establish and implement appropriate administrative, technical, and physical safeguards to ensure the security and confidentiality of Plaintiffs' and Class Members' Personal Identifying Information.

46.    Defendants have failed to protect against reasonably foreseeable threats to the security or integrity of Plaintiffs' and Class Members' Personal Identifying Information.

47.    Plaintiffs' and Class Members' Personal Identifying Information is private and sensitive in nature and was inadequately protected by Defendants.

48. The ramification of Defendants' failure to keep Plaintiffs' and Class Members' Personal Identifying Information secure is severe.

49. As a direct and proximate result of Defendants' negligence, wrongful action and inaction, Plaintiffs and Class Members have been placed at an imminent, immediate, and continuing increased risk of harm from identity theft and identity fraud, requiring them to take the time and effort to mitigate the actual and potential impact of the subject data breach on their lives by, among other things, placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, and closely reviewing and monitoring their credit reports and accounts for unauthorized activity.

50. Plaintiffs and Class Members will be required to spend time and resources to cancel every debit and/or credit card linked to their Defendants' accounts.

51. Plaintiffs and Class Members will be required to spend time and resources to monitor his or her credit reports to be on the lookout for fraud and/or identity theft.

52. Plaintiffs and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights.

53. Plaintiffs and the Class Members have and will incur monetary costs though hiring legal counsel to protect their good credit, reputations and rights.

54. Plaintiffs and Class Members now face years of increased risk loss of use of their credit and access to funds, including fraudulent and unreimbursed credit card charges.

55. Defendants' negligence, wrongful actions and inaction directly and proximately caused the, display, disclosure, leakage, theft and dissemination into the public domain of Plaintiffs' and Class Members' Personal Identifying Information.

56.     Defendants' negligence, wrongful actions and inaction has caused Plaintiffs and Class Members to suffer, and continue to suffer, economic damages and other actual harm for which they are entitled to compensation, including:

       a.     theft of their personal and financial information;

       b.     he improper disclosure of their Personal Identifying Information;

       c.     the imminent and certainly impending injury flowing from potential fraud and identify theft posed by their personal information being placed in the hands of criminals and already misused via the sale of Plaintiffs' and Class Members' information on the Internet black market;

       d.     ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the data breach; Ascertainable losses in the form of deprivation of the value of their Personal Identifying Information, for which there is a well-established national and international market;

       e.     Plaintiffs and Class Members were overcharged when they paid for and used Defendants' services and properties to the extent that they paid a premium to purchase and use Defendants' services and properties on the basis that Defendants ran a safe and secure operation;

       f.     loss of privacy;

       g.     injuries caused by the untimely and inadequate notification of the data breach; and

       h.     the deprivation of rights they possess under state law.

## V.     Causes of Action

57.     Plaintiffs incorporate the above paragraphs as if fully set forth below.

58.     Plaintiffs bring this action on his own behalf and pursuant to the Federal Rules of Civil Procedure Rule 23(a), (b)(2), (b)(3), and (c)(4), Plaintiffs seek certification of statewide classes in the states where they reside.

**Count I - Violation of the Illinois Personal Information Protection Act**

59.    For the sake of judicial economy, the Plaintiffs MICHAEL J. FOX, ANTHONY MARTIN, MONICA OGAWA and NORBERT HENNRICH incorporate all of the above paragraphs into this Count as if fully set forth.

60.    The Illinois Personal Information Protection Act ("IPIPA") requires data collectors to inform Illinois citizens and state officials of data breaches.  See, 815 ILCS 530/1, et. seq.

61.    The IPIPA requires data collectors to inform Illinois citizens and state officials of data breaches.

62.    Section 530/10 states as follows:

> The disclosure notification shall be made in the most expedient time possible and without unreasonable delay, consistent with any measures necessary to determine the scope of the breach and restore the reasonable integrity, security, and confidentiality of the data system.

63.    Marriott is a "data collector" as defined by the IPIPA because it handles, collects, disseminates and otherwise deals with nonpublic personal data.

64.    Starwood is a "data collector" as defined by the IPIPA because it handles, collects, disseminates and otherwise deals with nonpublic personal data.

65.    The events described in this civil action constitute a "breach of the security of the system data" because Defendants' misconduct led to the unauthorized acquisition of computerized data that compromises the security, confidentiality, or integrity of personal information maintained by Defendants.

66.    As set forth above, Defendants allowed "personal information" as defined by the IPIPA to be disclosed, leaked, accessed, viewed or otherwise misappropriated by unknown third parties, because on information and belief, the information disclosed, leaked, accessed, viewed or otherwise misappropriated by nefarious third-parties includes the names of the Plaintiffs and Class Members and their names, phone

numbers, email addresses, passport numbers, date of birth and credit card numbers and card expiration dates.

67.    Defendants violated the IPIPA by failing to disclose the data breach as required by Section 530/10.

68.    Defendants violated the IPIPA because as of the filing of this civil action, no disclosure notification was "made in the most expedient time possible and without unreasonable delay."

69.    Defendants violated the IPIPA because the disclosure notification was not "consistent with any measures necessary to determine the scope of the breach."

70.     Defendants violated the IPIPA because the disclosure notification was not "consistent with any measures necessary to . . . restore the reasonable integrity, security, and confidentiality of the data system."

71.    Defendants withheld the data breach from Starwood members.

72.    A violation of the IPIPA constitutes an unlawful practice under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS § 505/1, et. seq.

73.    As discussed in the following Count, Defendants' negligence, misconduct and inaction violated the ICFA.

74.    Defendants' negligence, misconduct and inaction led to one or more data breaches and one or more disclosures of protected personal information.

75.    As discussed above, Plaintiffs have been harmed by Defendants' conduct.

76.    Plaintiffs would not have made a reservation with the Starwood guest reservation database if they had known that their personal information was at risk as a result of Defendants' lack security protocols.

77.     Plaintiffs would have stopped using Starwood guest reservation database if they had known that their personal information had been breached as a result of Defendants' lack security protocols.

78.     The Illinois based putative class actions can be defined as follows:

> All Illinois residents (as demonstrated by Defendants' records) who had their Personal Identifying Information compromised by Defendants and Defendants filed to meet the statutory requirements of the IPIPA.

WHEREFORE, Plaintiffs MICHAEL J. FOX,  ANTHONY MARTIN, MONICA OGAWA andNORBERT HENNRICH and Class Members residing in Illinois are entitled to declaratory relief, damages, attorney's fees, injunctive relief and equitable relief to remedy the above described misconduct.

## Count II - Violation ICFA

79.     For the sake of judicial economy, Plaintiffs MICHAEL J. FOX,  ANTHONY MARTIN, MONICA OGAWA and NORBERT HENNRICH incorporate all of the above paragraphs into this Count as if fully set forth.

80.     For the sake of judicial economy, the Plaintiffs MICHAEL J. FOX, ANTHONY MARTIN, MONICA OGAWA and NORBERT HENNRICH incorporate all of the above paragraphs into this Count as if fully set forth.

81.     Section 2 of ICFA prohibits, *inter alia*, deceptive and unfair conduct, including but not limited to, false representations, false statements and omissions.

82.     Section 2 provides that:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice ... in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

83.     Under the ICFA, an unfair act or practice is one that (a) offends public policy or (b) is immoral, unethical, oppressive or unscrupulous.

84.     Defendants' negligence, misconduct and inaction all constitute unfair practices in violation of ICFA.

85.     Defendants' negligence, misconduct and inaction offends public policy.

86.     Defendants' negligence, misconduct and inaction was and is immoral, unethical and unscrupulous.

87.     Defendants' negligence, misconduct and inaction has caused substantial emotional distress injury to consumers.

88.     The proposed Illinois class is defined as: All Illinois residents who were subjected to Defendant's unfair conduct.

89.     And while not required to state a claim of unfair conduct under ICFA, Defendants' negligence, misconduct and inaction has or will cause real and substantial economic harm to the Illinois Plaintiffs.

WHEREFORE, because Defendants violated ICFA, Plaintiffs MICHAEL J. FOX, ANTHONY MARTIN, MONICA OGAWA and NORBERT HENNRICH and Class Members residing in Illinois are entitled to declaratory relief, damages, attorney's fees, injunctive relief and equitable relief to remedy the above described misconduct.

**Count III –Tort of Intrusion Upon Seclusion**

90.     For the sake of judicial economy, Plaintiffs MICHAEL J. FOX, ANTHONY MARTIN, MONICA OGAWA, NORBERT HENNRICHand SAM MANGANO incorporate Paragraphs 1-57 as if fully set forth.

91.     Under common law, a tort of Intrusion Upon Seclusion is committed where a person or entity intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns.

92.     Any such person or entity is subject to liability to the other for invasion of his or her privacy, if the intrusion would be highly offensive to a reasonable person.

93.     Defendants' negligence, misconduct and inaction has led to data breaches and the disclosure of personal information, including, possible pick up and drop off points for rides paid for through Uber's rideshare app.

94.     Plaintiffs had a reasonable expectation that Defendants would not compromise their Personal Identifying Information.

95.     Defendants' negligence, misconduct and inaction and resultant data disclosures were objectively unreasonable.

96.     Accordingly, Defendants intruded upon the solitude, seclusion, private affairs and concerns of Plaintiffs and Class Members.

97.     Illinois based putative class actions can be defined as follows:

> All Illinois residents (as demonstrated by Defendants' records) who provided their Personal Identifying Information to Defendants who had their privacy violated as a result of Defendants negligently or recklessly disclosing their Personal Identifying Information.

98.     The Ohio based putative class actions can be defined as follows:

> All Ohio residents (as demonstrated by Defendants' records) who provided their Personal Identifying Information to Defendants who had their privacy violated as a result of Defendants negligently or recklessly disclosing their Personal Identifying Information.

WHEREFORE, Plaintiffs and Class Member in Illinois and Ohio are entitled to declaratory relief, damages, attorney's fees, injunctive relief and equitable relief to remedy the above described misconduct.

**Count IV – Breach of Implied Contract**

99.     For the sake of judicial economy, Plaintiffs MICHAEL J. FOX, ANTHONY MARTIN, MONICA OGAWA, NORBERT HENNRICH and SAM MANGANO incorporate the above Paragraphs as if fully set forth.

100.   Defendants solicited and invited Plaintiffs and the members of the Class to make a hotel reservation at properties owned or maintained by Defendants.

101.   Plaintiffs and Class Members accepted Defendants' offers and made reservations and the subject properties.

102.   When Plaintiffs and Class Members made a reservation for Defendants' properties with the Starwood guest reservation database, they provided their Personal Identifying Information.

103.   In so doing, Plaintiffs and Class Members entered into to safeguard their Personal Identifying Information.

104.   Plaintiffs entered into implied contracts with Defendants whereby it was reasonable for Plaintiffs and Class Members to believe that Defendants agreed to timely and accurately notify Plaintiffs and Class Members if their Personal Identifying Information had been leaked, breached and compromised.

105.   Each reservation by Plaintiffs and Class Members was made pursuant to the mutually agreed-upon implied contract with Defendants under which Defendants agreed to safeguard and protect Plaintiffs' and Class Members' Personal Identifying Information.

106.   Each reservation by Plaintiffs and Class Members was made pursuant to the mutually agreed-upon implied contract with Defendants under which Defendants agreed to timely and accurately notify them if such Personal Identifying Information was compromised, leaked or stolen.

107.   Plaintiffs and Class Members would not have provided and entrusted their Personal Identifying Information to Defendants in the absence of the implied contract between them and Defendants.

108.    Plaintiffs and Class Members fully performed their obligations under the implied contracts with Defendants.

109.    Defendants breached the implied contracts they made with Plaintiffs and Class Members by failing to safeguard and protect the Personal Identifying Information of Plaintiffs and Class Members and by failing to provide timely and accurate notice to them that their Personal Identifying Information was compromised as a result of the data leaks, hacks and/or breaches.

110.    As a direct and proximate result of Defendants' breaches of the implied contracts with Plaintiffs and Class Members, Plaintiffs and Class Members sustained actual losses and damages as described herein.

111.    The Illinois based putative class actions can be defined as follows:

> All Illinois residents (as demonstrated by Defendants' records) who provided their Personal Identifying Information to Defendants based upon an implied, contractual understanding that Defendants would securely maintain their Personal Identifying Information where their Personal Identifying Information was negligently disclosed by Defendants' failure to secure their Personal Identifying Information.

112.    The Ohio based putative class actions can be defined as follows:

> All Ohio residents (as demonstrated by Defendants' records) who provided their Personal Identifying Information to Defendants based upon an implied, contractual understanding that Defendants would securely maintain their Personal Identifying Information where their Personal Identifying Information was negligently disclosed by Defendants' failure to secure their Personal Identifying Information.

WHEREFORE, Plaintiffs and Class Members residing in Illinois and Ohio are entitled to declaratory relief, damages, attorney's fees, injunctive relief and equitable relief to remedy the above described misconduct.

**Count V – Negligence**

113. For the sake of judicial economy, Plaintiffs MICHAEL J. FOX, ANTHONY MARTIN, MONICA OGAWA, NORBERT HENNRICH and SAM MANGANO incorporate the above Paragraphs as if fully set forth.

114. Upon accepting Plaintiffs' and Class Members' Personal Identifying Information in their respective Starwood guest reservation database, Defendants undertook and owed a duty to Plaintiffs and Class Members to exercise reasonable care to secure and safeguard their Personal Identifying Information from being compromised, lost, stolen, misused, and or/disclosed to unauthorized parties, and to utilize commercially reasonable methods to do so.

115. This duty included, among other things, designing, maintaining, and testing security systems to ensure that Plaintiffs' and the Class Members' Personal Identifying Information was adequately secured and protected.

116. Defendants further had a duty to implement processes that would detect a breach of its security system in a timely manner.

117. Defendants had a duty to timely disclose to Plaintiffs and Class Members that their Personal Identifying Information had been or was reasonably believed to have been compromised.

118. Timely disclosure was appropriate so that, among other things, Plaintiffs and Class Members could take appropriate measures to avoid use of bank funds, and monitor their account information and credit reports for fraudulent activity.

119. Defendants breached their duty to discover and to notify Plaintiffs and Class Members of the unauthorized access by failing to discover the security breach within reasonable time and by failing to notify Plaintiffs and Class Members of the breached and/or leaked data.

120.     To date, Defendants has not provided sufficient information to Plaintiffs and Class Members regarding the extent and scope of the breached and/or leaked data and continues to breach its duty to disclosure the extent to the breached and/or leaked data to Plaintiffs and the Class Members.

121.     Defendants also breached their duty to Plaintiffs and Class Members to adequately protect and safeguard this information by knowingly disregarding standard information security principles, despite obvious risks, and by allowing unmonitored and unrestricted access to unsecured Personal Identifying Information.

122.     Furthering its negligent practices, Defendants failed to provide adequate supervision and oversight of the Personal Identifying Information with which it is entrusted, in spite of the known risk and foreseeable likelihood of breach and misuse, which permitted a third party to gather Plaintiffs' and Class Members' Personal Identifying Information, misuse the Personal Identifying Information, and intentionally disclose it to others without consent.

123.     Through Defendants' acts and omissions described in this Complaint, including their failure to provide adequate security and its failure to protect Plaintiffs' and Class Members' Personal Identifying Information from being foreseeably captured, accessed, disseminated, stolen, and misused, Defendants unlawfully breached their duty to use reasonable care to adequately protect and secure Plaintiffs' and Class Members' Personal Identifying Information during the time it was within their control.

124.     Further, through its failure to timely discover and provide clear notification of the data breach to consumers, Defendants prevented Plaintiffs and Class Members from taking meaningful, proactive steps to secure their Personal Identifying Information.

125.     Upon information and belief, Defendants improperly and inadequately safeguarded the Personal Identifying Information of Plaintiffs and Class Members in

deviation from standard industry rules, regulations, and practices at the time of the data leak and/or breach.

126.    Defendants' failure to take proper security measures to protect Plaintiffs' and Class Members' sensitive Personal Identifying Information as described in this Complaint, created conditions conducive to a foreseeable, intentional criminal act, namely the unauthorized access of Plaintiffs' and Class Members' Personal Identifying Information.

127.    Defendants' conduct was grossly negligent and departed from all reasonable standards of care, including, but not limited to: failing to adequately protect the Personal Identifying Information; failing to conduct adequate regular security audits; failing to provide adequate and appropriate supervision of persons having access to Plaintiffs' and Class Members' Personal Identifying Information.

128.    Neither Plaintiffs nor the other Class Members contributed to the data breach and/leak and subsequent misuse of their Personal Identifying Information as described in this Complaint.

129.    As a direct and proximate result of Defendants' negligence, Plaintiffs and Class Members sustained actual losses and damages as described in detail above.

130.    As a direct and proximate result of Defendants' negligence, Plaintiffs and Class Members sustained actual losses and damages as described herein.

131.    The Illinois based putative class actions can be defined as follows:

> All Illinois residents (as demonstrated by Defendants' records) who provided their Personal Identifying Information to Defendants via a secure website where their Personal Identifying Information was negligently disclosed by Defendants' failure to secure their Personal Identifying Information.

132.    The Ohio based putative class actions can be defined as follows:

> All Ohio residents (as demonstrated by Defendants' records) who provided their Personal Identifying Information to Defendants via a

secure website where their Personal Identifying Information was negligently disclosed by Defendants' failure to secure their Personal Identifying Information.

WHEREFORE, Plaintiffs and Class Members residing Illinois and Ohio are entitled to declaratory relief, damages, attorney's fees, injunctive relief and equitable relief to remedy the above described misconduct.

**Count VI – Right of Privacy**

133.   For the sake of judicial economy, Plaintiffs MICHAEL J. FOX, ANTHONY MARTIN, MONICA OGAWA, NORBERT HENNRICH and SAM MANGANO incorporate the above Paragraphs as if fully set forth above.

134.   The laws of each state of residence of the Plaintiffs and Class Members maintain a legally protected privacy interest in the Personal Identifying Information they provided to Defendants.

135.   Plaintiffs and Class Members had a reasonable expectation of privacy as to the Personal Identifying Information they provided under the circumstances of their purchases or use of the Starwood reservation system.

136.   Defendants' actions and inactions amounted to a serious invasion of the protected privacy interests of Plaintiffs and Class Members.

137.   Defendants' actions and inactions lead to and/or caused an invasion of Plaintiffs and Class Members' reasonable expectation of privacy caused Plaintiffs and Class members to suffer damages.

138.   The Illinois based putative class actions can be defined as follows:

All Illinois residents (as demonstrated by Defendants' records) who provided their Personal Identifying Information to Defendants via a secure website which supports reasonable expectation of privacy where their Personal Identifying Information was disclosed due to Defendants' breach of their duty to protect Personal Identifying Information.

139.   The Ohio based putative class actions can be defined as follows:

20

> All Ohio residents (as demonstrated by Defendants' records) who provided their Personal Identifying Information to Defendants via a secure website which supports reasonable expectation of privacy where their Personal Identifying Information was disclosed due to Defendants' breach of their duty to protect Personal Identifying Information.

WHEREFORE, Plaintiffs and class members in Illinois and Ohio are entitled to declaratory relief, damages, attorney's fees, injunctive relief and equitable relief to remedy the above described misconduct.

**General Prayer For Relief**

WHEREFORE, Plaintiffs, MICHAEL J. FOX, ANTHONY MARTIN, MONICA OGAWA, NORBERT HENNRICH and SAN MANGANO, individually and on behalf of all Class Members proposed in this Complaint, respectfully requests that the Court enter judgment in their favor and against Defendants as follows:

> A. For an Order certifying the Nationwide Class and statewide Classes as defined here, and appointing Plaintiffs and their Counsel to represent the Nationwide Class and statewide Classes;

> B. For equitable relief enjoining Defendants from engaging in the wrongful conduct complained of here pertaining to the misuse and/or disclosure of Plaintiffs' and Class Members' Personal Identifying Information, and from refusing to issue prompt, complete, and accurate disclosures to the Plaintiffs and Class Members;

> C. For equitable relief compelling Defendants to utilize appropriate methods and policies with respect to consumer data collection, storage, and safety and to disclose with specificity to Class Members the type of Personal Identifying Information compromised.

> D. For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Defendants' wrongful conduct;

> E. For an award of actual damages and compensatory damages, in an amount to be determined; and

> F. For an award of costs of suit and attorneys' fees, to the extent allowed by law.

### V.     The Elements of Rule 23 Are Satisfied

140.    The elements of Fed. R. Civ. P. 23 will be satisfied.

141.    Plaintiffs reserve the right to amend the Class definitions if discovery and further investigation reveal that the Classes should be expanded or otherwise modified.

142.    *Numerosity.* Fed. R. Civ. P. 23(a)(1). The members of the Classes are so numerous that the joinder of all members is impractical. While the exact number of Class Members is unknown to Plaintiffs at this time, Defendants acknowledged that the information of at least 500 million customers' was made available on its website.

143.    The disposition of the claims of Class Members in a single action will provide substantial benefits to all parties and to the Court.

144.    The Class Members are readily identifiable from information and records in Defendant's possession, custody, or control.

145.    *Commonality.* Fed. R. Civ. P. 23(a)(2) and (b)(3). There are questions of law and fact common to the Classes, which predominate over any questions affecting only individual Class Members.

146.    These common questions of law and fact include, without limitation:

      a.    whether Defendants owed a duty of care to Plaintiffs and Class Members with respect to the security of their personal information;

      b.    whether Defendants took reasonable steps and measures to safeguard Plaintiffs' and Class Members' personal information;

      c.    whether Defendants failed to implement reasonable security procedures and practices;

      d.    whether Defendants violated common and statutory law by failing to promptly notify Class Members their personal information had been compromised;

      e.    which security procedures and which data-breach notification procedure should Defendants be required to

implement as part of any injunctive relief ordered by the Court;

f.    whether Defendants have an implied contractual obligation to use reasonable security measures;

g.    whether Defendants have complied with any implied contractual obligation to use reasonable security measures;

h.    whether Defendants' acts and omissions give rise to a claim of negligence or recklessness;

i.    whether Defendants knew or should have known of the security breach or leaks prior to its disclosure;

j.    whether Defendants had a duty to promptly notify Plaintiffs and Class Members that their personal information was, or potentially could be, compromised;

k.    what security measures, if any, must be implemented by Defendants to comply with its implied contractual obligations; and

l.    whether Defendants violated state law in connection with the acts and omissions described herein.

147.   *Typicality.* Fed. R. Civ. P. 23(a)(3). Plaintiffs' claims are typical of those of other Class Members because Plaintiffs' Personal Identifying Information, like that of every other Class Member, was misused and/or disclosed by Defendants.

148.   *Adequacy of Representation.* Fed. R. Civ. P. 23(a)(4). Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class.

149.   Plaintiffs have retained a competent counsel who is experienced in the litigation of class actions, including consumer rights class actions.

150.   Plaintiff's lead attorney, James C. Vlahakis, is an experienced consumer class action litigator who has litigated hundreds consumer-based claims. A former defense attorney, Mr. Vlahakis recently was appointed to the Steering Committee in a nationwide class action against Apple, Inc., *In Re: Apple Inc. Device Performance Litigation*, 18-md-02827 (N.D. Cal. May 15, 2018) (Dkt. Entry no. 99), where his is

counsel for two dozen proposed class representatives. Mr. Vlahakis began his litigating consumer class actions in 1998 and continued to defend individual consumer claims and putative class action through 2017. Mr. Vlahakis has litigated a variety of consumer claims, ranging from the Fair Debt Collection Practice ("FDCPA") claims to the Telephone Consumer Protection Act ("TCPA"). In conjunction with counsel for the class members, as a defense attorney, Mr. Vlahakis obtained Court approval of FDCPA and TCPA class class-bases settlements. *See, e.g., In Re Capital One Telephone Consumer Protection Act Litigation*, 2012-cv-10064 (N.D. Ill.) ($75 million dollar ATDS based settlement); *Prater v. Medicredit, Inc.*, 2014-cv-0159 ($6.3 million dollar ATDS wrong party settlement); *INSPE Associates v. CSL Biotherapries, Inc.* (N.D. Ill.) ($3.5 million fax based settlement). Mr. Vlahakis is familiar with class certification proceedings and vigorously litigated and defeated numerous class certification motions. For example, Mr. Vlahakis defeated a TCPA cell phone based proposed class action in *Jamison v. First Credit Services, Inc.* 290 F.R.D. 92 (N.D. Ill. Mar. 28, 2013), reconsideration denied, 2013 U.S. Dist. LEXIS 105352 (N.D. Ill. July 29, 2013). And in *Pesce v. First Credit Services, Inc.*, 2012 U.S. Dist. LEXIS 188745 (N.D. Ill. June 6, 2012), Mr. Vlahakis decertified a putative TCPA cellular phone based class action in.

151.    Plaintiffs intend to prosecute this action vigorously.

152.    Plaintiffs' claims are typical of the claims of other members of the Class and Plaintiffs have the same non-conflicting interests as the other Members of the Class.

153.    In particular, there are no impermissible intra-class conflicts.

154.    *Superiority of Class Action*. Fed. R. Civ. P. 23(b)(3). A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all the members of the Classes is impracticable.

155.    Furthermore, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the asserted claims.

156.    There will be no difficulty in the management of this action as a class action.

157.    Damages for any individual class member are likely insufficient to justify the cost of individual litigation so that, in the absence of class treatment, Defendants' violations of law inflicting substantial damages in the aggregate would go un-remedied.

158.    Class certification is also appropriate under Fed. R. Civ. P. 23(a) and (b)(2), because Defendants have acted or has refused to act on grounds generally applicable to the Classes, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Classes as a whole.

*Plaintiffs demand a jury on all counts where a jury trial may exist.*

Respectfully Submitted,
Counsel for Plaintiffs

/s/ James C. Vlahakis
James C. Vlahakis
Sulaiman Law Group, Ltd.
2500 South Highland Avenue, Suite 200
Lombard, IL 60148
(630) 581-5456
jvlahakis@sulaimanlaw.com